**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| PARIS THOMAS, | ) | |
| | ) | |
| Petitioner, | ) | No. 13-cv-03749 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| RANDY PFISTER, Warden, Stateville | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

In 2004, Petitioner Paris Thomas was convicted of first degree murder and home invasion

and was sentenced to consecutive prison terms of 40 years and 10 years, respectively. Thomas is

now serving his sentence at Stateville Correctional Center in Joliet, Illinois. Before the Court is

Thomas's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, in which he claims

that (1) his trial counsel was ineffective in a number of ways, (2) his counsel on direct appeal

was ineffective for failing to raise the various failings of his trial counsel, (3) the postconviction

trial court violated state law by making findings of fact before summarily dismissing his petition

as frivolous and patently without merit, and (4) his postconviction appellate counsel was

ineffective for failing to raise the purported error by the postconviction trial court and instead

raising only two other claims in his postconviction petition for leave to appeal ("PLA"). For the

reasons stated below, Thomas's petition for a writ of habeas corpus is denied.

## BACKGROUND

A federal court considering a petition for a writ of habeas corpus presumes correct the

factual findings made by the last state court to adjudicate the case on the merits, unless those

findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Rever v.*

*Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). The last state court to make factual findings regarding Thomas's case was the Illinois Appellate Court, in its opinion on direct appeal affirming Thomas's conviction. (*See* Ans. Ex. A, Order, *People v. Thomas,* No. 1-04-2741 (Ill. App. Ct. Dec. 13, 2007), Dkt. No. 19-1; *see also Mendiola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir. 2000) (stating that a state appellate court's factual findings are entitled to the same deference afforded to a state trial court's findings)). Thomas argues in conclusory fashion that he has presented "clear and convincing factual representations that [are] contrary to lower courts['] findings." (Reply at 4, Dkt. No. 28.) But the Court, after reviewing all of the materials submitted by Thomas, fails to discern any evidence that contradicts the state court findings, and therefore those findings are accepted as correct.

### A.      Trial Proceedings[1]

Thomas was indicted along with Bishara Thomas ("Bishara"), Steven Jackson, and Terrell Sims for the April l, 2002 home invasion and murder of Tonette Waters. The cases of the four defendants were severed prior to trial. Because Thomas opted for a jury trial and Sims opted for a bench trial, the trials of those two defendants were held at the same time, while Bishara and Jackson were tried later.

### 1.      Thomas's Videotaped Statement

A key piece of evidence in the State's case against Thomas was his videotaped statement taken during an interview by Assistant State's Attorney Kim Ward. The statement was made after Thomas had received *Miranda* warnings and signed a consent form. Ward conducted most of Thomas's initial interview in the presence of Chicago Police Detective Adrian Garcia. Ward and Garcia also testified at trial.

---

[1] Except where otherwise indicated, the facts set forth in this section are taken from the Illinois Appellate Court's opinion affirming Thomas's conviction. (Ans. Ex. A, Order, *People v. Thomas*, No. 1-04-2741, at *2– 10 (Ill. App. Ct. Dec. 13, 2007).)

In his videotaped statement, Thomas stated that he had encountered his cousin, Steven Jackson, on the afternoon of Waters's murder. Both Thomas and Jackson were members of the Traveling Vice Lords street gang. Jackson asked Thomas whether he wanted to perform a "lick"—slang for a robbery—for $8,000 in money or drugs. Thomas agreed, and he and Jackson drove to the home of Terrell Sims, another Traveling Vice Lord with whom Thomas was close. Thomas told Sims about the planned robbery and asked Sims whether he wanted to participate for a share of the proceeds. Thomas, Jackson, and Sims then picked up Bishara, another Traveling Vice Lord, and drove to Waters's apartment, where she lived with her children and Lavarious Edwards.

After they arrived at Waters's apartment, Jackson knocked on the door. When Waters answered, Thomas told Waters he had Edwards's keys. When Waters opened the door, Thomas grabbed her around the waist and turned her aside to allow his accomplices to enter. Jackson grabbed Waters by her hair and passed her to Bishara, who held her at gunpoint. Bishara and Jackson took Waters to the back of the apartment while Thomas searched the front. After some time, Bishara and Jackson returned to the front of the apartment with Waters, and Thomas and Sims searched the back. After Thomas and Sims found no money, they returned to the front of the apartment, noticing Waters's two children for the first time. Bishara and Jackson again took Waters to the back of the apartment, and when they returned a short time later, Waters was naked. Waters began screaming, and Jackson told Thomas and Sims to exit through the back door. Thomas and Sims ran to the car they had left in the alley and waited until Jackson and Bishara joined them. Jackson then drove Thomas and Sims to Thomas's house.

Thomas claimed in his videotaped statement that he did not know Waters was dead until his family told him that a neighborhood girl had been shot and killed. He stated that he went to

the apartment to commit robbery, not to kill anyone. He explained that they brought the gun to scare Lavarious Edwards if he was present.

Before trial, Thomas moved *in limine* to redact a portion of the videotaped confession in which he stated that he or his accomplices usually carried a gun during robberies "for safety." Thomas's counsel argued that this statement referenced prior uncharged offenses, assumed other crimes, and would be highly prejudicial. The State argued that the statement was merely an admission that went to Thomas's intent and knowledge of the presence of the gun, and was not prejudicial. The trial court denied the motion but offered to instruct the jury to limit its consideration of that portion of the videotape to issues of Thomas's intent and knowledge. Thomas's counsel declined that offer, and the videotaped statement was entered into evidence at trial.

### 2. Testimony of James Chatman

James Chatman, Bishara's cousin, testified at trial that on April 1, 2002, Bishara and Jackson came to his house, Bishara retrieved something from the basement, and then Bishara and Jackson left his house. Bishara returned 20 minutes later, entered the house, tossed the gun to Chatman, and told him, "We just did something with this." Chatman further testified that Bishara then washed his hands and face. Chatman testified that he could feel that the gun was warm, and he wrapped it in a shirt and took it back into the basement. Chatman later heard that Waters, his girlfriend's best friend, had been killed. He then called the police and arranged to turn in the gun.

### 3. Testimony of Kurt Zielinski

Kurt Zielinski, a forensic scientist with the Illinois State Police, testified as an expert in firearms identification. Zielinski testified that, in his expert opinion, a bullet recovered from

Waters's body had been fired from the firearm identified by Chatman to the exclusion of all other firearms.

### 4.     Testimony of Varielle Edwards

Varielle Edwards ("Varielle"), the eight-year-old daughter of Waters, testified that she had fallen asleep and awoke when her mother entered Varielle's room with a man holding a gun to her ear, as three other men ransacked the apartment. Varielle later entered the bathroom to find her mother naked, with one of the men holding her. Three of the men exited the apartment through the rear door, and the man who was holding Waters shot her in the head. After watching her mother's murder, Varielle grabbed her younger brother and ran across the street to her grandmother's house. Varielle initially told police that there were three intruders but she could not identify them.

### 5.     Jury Instructions and Verdict

The jury was instructed that it could convict Thomas of first-degree murder

> when he kills an individual if in performing the acts which caused the death he intended to kill or do great bodily harm to that individual, or he knows that such acts will cause death to that individual, or he knows that such acts create a strong probability of death or great bodily harm to that individual, or he was committing the offense of home invasion or he was attempting to commit the offense of armed robbery.

(Ans. Ex. T at 103, Dkt. No. 19-20; Ans. Ex. V at 84, Dkt. No. 19-22.) The jury was given general verdict forms for the offense of first-degree murder—one form stating that the jury found Thomas guilty of first-degree murder and the other form stating that the jury found Thomas not guilty of that offense. (Ans. Ex. V at 90–91, 95, Dkt. No. 19-22.) The jury found Thomas guilty of one count of first-degree murder and one count of home invasion. Thomas was ultimately sentenced to consecutive terms of 40 years' imprisonment for first-degree murder and 10 years' imprisonment for home invasion.

**B.      Direct Appeal**

On direct appeal, Thomas argued that:

> (1) the State failed to prove him guilty of murder beyond a reasonable doubt;
>
> (2) the prosecutor's closing argument denied him a fair trial by:
>
>> (a) misstating the law regarding accountability,
>>
>> (b) using a pre-arrest photograph of Thomas to rebut Thomas's claim that his confession was coerced, and
>>
>> (c) incorrectly stating that Thomas grabbed Waters by her braids;
>
> (3) trial counsel was ineffective for:
>
>> (a) eliciting harmful testimony on cross-examination,
>>
>> (b) failing to question jurors about their potential bias against gangs,
>>
>> (c) declining the trial court's offer to provide a limiting instruction regarding Thomas's admission that he and his accomplices typically bring a gun to a robbery "for safety,"
>>
>> (d) failing to move to suppress Thomas's confession,
>>
>> (e) failing to present evidence to support his opening statement claim that Thomas's confession was coerced, and
>>
>> (f) failing to object to photographs of the victim.

(Ans. Ex. A at 1–2, Dkt. No. 19-1; Ans. Ex. L at 2, 23, 26, Dkt. No. 19-12.)

The Illinois Appellate Court affirmed Thomas's conviction and sentence. (Ans. Ex. A at 36.) In so doing, the court first rejected Thomas's argument that the State failed to prove the *corpus delicti* underlying his murder conviction, reasoning that Thomas admitted in his videotaped statement that he had agreed to participate in robbing Waters's apartment; tricked Waters into opening her door; and searched Waters's apartment for money. (*Id.* at 14.) The court further noted that Thomas had stated that Jackson and Bishara held Waters at gunpoint, that

Waters was naked the last time he saw her, that he saw two children in the apartment, and that he and Sims exited the apartment through the rear door. (*Id.*) The court further observed that the State had presented independent, mutually-corroborating evidence on several points, including Varielle's testimony that one of the intruders shot her mother in the back of the head and forensic confirmation that the gun Bishara borrowed from Chatman was the murder weapon. (*Id.* at 14–15.) Given this evidence, the court found that the evidence established the *corpus delicti* of the crime of murder. (*Id.* at 15.) The court also found that the evidence described above was sufficient to sustain Thomas's home-invasion conviction. (*Id.* at 16.)

The Illinois Appellate Court also rejected Thomas's ineffective assistance of counsel claims. In particular, it reasoned that counsel may have reasonably declined the trial court's offer to provide a limiting instruction regarding Thomas's statement that he and his accomplices typically bring a gun to robberies in order "to avoid unduly emphasizing" the other crimes that the statement implied. (*Id.* at 35.) It further found that counsel did not perform unreasonably in opting not to move to suppress Thomas's confession, given that the record contained no evidence to support such a motion. (*Id.* at 35–36.)

After his conviction was affirmed by the Illinois Appellate Court, Thomas filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, raising the same claims that he had advanced in the appellate court. (*See* Ans. Ex. M at 7–8, Dkt. No. 19-13.) The Illinois Supreme Court denied the PLA. (*People v. Thomas*, 904 N.E.2d 985 (Ill. 2009) (Table).) The United States Supreme Court subsequently denied Thomas's petition for a writ of *certiorari*. (*Thomas v. Illinois*, 558 U.S. 997 (2009).)

### D. Postconviction Petition and Appeal

In April 2010, Thomas filed a petition for postconviction relief in state trial court, raising two claims under 725 ILCS 5/122, *et seq.*:

(1) that his trial counsel was ineffective for:

   (a) failing to request separate verdict forms on Thomas's murder indictments,

   (b) failing to challenge the sufficiency of the evidence in a post-trial motion,

   (c) failing to object to the constructive amendment of Thomas's indictments,

   (d) failing to interview or call Thomas's codefendants to testify that Thomas fled before Bishara shot Waters,

   (e) failing to move to suppress Thomas's videotaped statement based on the fact that he was presented to a court 39 hours after his arrest,

   (f) stipulating to the medical examiner's testimony, and

   (g) these errors cumulatively; and

(2) that appellate counsel was ineffective for failing to:

   (a) raise trial counsel's errors,

   (b) preserve the sufficiency-of-evidence claim, and

   (c) argue that Thomas was not found guilty beyond a reasonable doubt.

(Ans. Ex. C at 1–2, Dkt. No. 19-3; Ans. Ex. D at 2–13, Dkt. No. 19-4.)

The postconviction trial court dismissed the petition, holding that all of Thomas's claims were either barred by *res judicata* because the claims had been rejected on direct appeal, or forfeited because they could have been raised on direct appeal but were not. (Ans. Ex. C at 7, Dkt. No. 19-3.) The postconviction trial court alternatively held that each claim was meritless. (*Id.*)

Thomas timely appealed the postconviction trial court's decision. On postconviction appeal before the Illinois Appellate Court, Thomas argued that his trial counsel was ineffective for failing to request separate verdict forms for each theory of first-degree murder. (Ans. Ex. E at 2, Dkt. No. 19-5.) Thomas further argued that his counsel on direct appeal was ineffective for failing to raise this claim and also for failing to challenge the sufficiency of the evidence underlying Thomas's murder charge "on a theory of accountability." (*Id.*) The Illinois Appellate Court affirmed the dismissal of the postconviction petition, finding that Thomas's direct-appeal counsel had raised a sufficiency-of-evidence claim on direct appeal and that Thomas "failed to overcome the presumption that [trial] counsel's failure to request separate verdict forms was the product of sound trial strategy where requesting separate verdict forms may have made it easier for the jury to find [Thomas] guilty of murder under a theory of felony murder due to the overwhelming evidence of his participation in the underlying home invasion." (Ans. Ex. B at 4–6, Dkt. No. 19-2 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).)

Thomas subsequently filed a postconviction PLA with the Illinois Supreme Court. (Ans. Ex. H at 25, Dkt. No. 19-8.) His postconviction PLA raised two claims: that his trial counsel was ineffective for failing to request separate verdict forms for each theory of first-degree murder, and that his direct-appeal counsel was ineffective for failing to raise his trial counsel's ineffectiveness. (*Id.* at 3, 12–14.) The Illinois Supreme Court denied Thomas's postconviction PLA. (*People v. Thomas*, 981 N.E.2d 1002 (Ill. 2012) (Table).)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that this Court may not grant a petition for a writ of habeas corpus unless a state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, to qualify for federal habeas review, a federal constitutional claim must have been "fully and fairly presented . . . to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that [petitioner] later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). To have been fairly presented, the claim must have been asserted in one complete round of state-court review—either on direct appeal or in postconviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, one complete round of review includes the filing of a PLA with the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46. When a petitioner has failed to fairly present his federal constitutional claim to the state courts and the opportunity to raise that claim has passed, the claim is procedurally defaulted for purposes of federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

Federal courts may review procedurally defaulted claims in two instances. First, if the petitioner establishes cause for failure to raise the claim and actual prejudice resulting therefrom. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). The United States Supreme Court has defined cause sufficient to excuse procedural default as "some objective factor external to the defense," which precludes a petitioner's ability to pursue his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Second, if the petitioner establishes that a federal court's refusal to consider the defaulted claim would result in a fundamental miscarriage of justice—that is, where the constitutional violation has probably resulted in a conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that no reasonable juror would have convicted him if

not for the alleged trial errors. *Id*. He must support his allegations "with new reliable evidence— whether exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324.

Because Thomas filed his petition *pro se*, it must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and held to less stringent standards than formal pleading drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980).

## DISCUSSION

Thomas asserts four claims before this Court:

(1) Trial counsel was ineffective for failing to:

(a) "request separate verdict forms on murder indictments";

(b) "challenge [the] sufficiency of evidence or put it in a pre-trial motion";

(c) "object to constructive amendment of indictment";

(d) interview and call Thomas's codefendants as witnesses at his trial;

(e) move to suppress unspecified evidence "based upon a prompt presentment hearing;"

(f) object on unspecified grounds to the medical examiner's stipulated testimony;

(g) perform all of the above, which acted cumulatively to prejudice Thomas's defense;

(2) Counsel on direct appeal was ineffective for failing to raise trial counsel's failures to:

(a) object to the purported constructive amendment of the indictment;

(b) call Thomas's co-defendants at trial;

(c) file a motion to suppress unspecified evidence; and

(d) raise unspecified "confrontation issues;"

(3) The postconviction trial court violated Thomas's due process and equal protection rights by making findings of fact before summarily dismissing his petition as frivolous and patently without merit, contrary to the "state statute governing post-conviction proceedings;" and

(4) Postconviction appellate counsel was ineffective for:

(a) failing to raise claim 3, above; and

(b) raising only two claims in Thomas's postconviction PLA.

(Pet. at 7–13, Dkt. No. 1.)[2]

# I.     Ineffective Assistance of Counsel Claims

## A.     Ineffective Assistance of Postconviction Appellate Counsel

As an initial matter, Thomas's claim for habeas relief based on purported ineffective assistance of his postconviction appellate counsel does not present a cognizable ground for federal habeas relief. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see also Martinez v. Ryan*, 566 U.S. 1, 17 (2012) ("Section 2254(i) precludes [a habeas petitioner] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief'"); *Johnson v. McBride*, 381 F.3d 587, 590 (7th

---

[2] While his petition was pending before this Court, Thomas filed a Motion to Cite Additional Authority seeking leave to cite the decision in *Adorno v. Pierce*, No. 14-cv-00791, 2016 WL 1719788 (N.D. Ill. April 29, 2016). (Dkt. No. 40.) The Court grants Thomas's motion but the additional authority does not affect the Court's analysis for two reasons. First, Thomas's motion asserts that this additional authority supports his argument that he was denied due process and equal protection when the jury was presented with two different standards of proof in the jury instructions, a preponderance of evidence standard for "accountability," and a beyond a reasonable doubt standard for murder and home invasion. (*Id.* at 2–3.) But Thomas made no such argument in his petition or in his reply in support. (*See* Dkt. Nos. 8, 28.) Indeed, Thomas did not make any arguments regarding jury instructions in his petition at all. Second, even if Thomas had made such an argument in his petition, *Adorno* would not affect the Court's analysis because, since Thomas's motion, the Seventh Circuit has reversed *Adorno*, clarifying that an instruction explaining the reasonable-doubt standard "will amount to federal constitutional error only if 'there is a reasonable likelihood that the jury understood the [remarks] to allow conviction based on proof insufficient to meet the [reasonable-doubt] standard.'" *Adorno v. Melvin*, No. 16-2273, 2017 WL 5952105, *3 (7th Cir. Dec. 1, 2017) (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

Cir. 2004) ("Once trial and direct appeals have run their course . . . neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings."). Accordingly, the Court denies habeas relief based on this claim.

### B. Procedurally-Defaulted Claims

Respondent argues that a number of Thomas's ineffective assistance of counsel claims have been procedurally defaulted. Thomas contends in conclusory fashion that he raised all of the claims at issue here in state court. (Reply at 2, 4, Dkt. No. 28.) After a review of the record, however, it is clear to this Court that most of Thomas's claims listed above were not subject to a complete round of state court review and thus are procedurally defaulted. Specifically:

- Thomas claims that his trial counsel was ineffective for failing to "challenge [the] sufficiency of evidence or put it in a pre-trial motion." (Pet. at 7, Dkt. No. 1.) Even construing this argument broadly, the Court finds that this is procedurally defaulted. Although Thomas argued in his initial postconviction petition before the state trial court that his trial counsel "was ineffective for not raising a challenge to the sufficiency of the evidence in a post-trial motion," (Ans. Ex. D at 4–6, Dkt. No. 19-4), Thomas did not present this argument in his postconviction appeal or postconviction PLA. And he did not raise this claim at all on direct appeal.

- Thomas claims that his trial counsel was ineffective for failing to "object to constructive amendment of indictment." (Pet. at 8, Dkt. No. 1.) Thomas raised this issue in his initial postconviction petition, arguing that his trial counsel was ineffective "for not objecting to the constructive amendment of the petitioner's indictments for first degree murder." (Ans. Ex. D at 6, Dkt. No. 19-4.) However, he did not present this argument in his postconviction appeal or postconviction PLA. He also did not raise this claim on direct appeal.

- Thomas claims that his trial counsel was ineffective for failing to interview and subpoena Thomas's co-defendants. (Pet. at 8, Dkt. No. 1.) Thomas argued in his postconviction petition that his "[t]rial counsel was ineffective for failing to interview and subpoena the petitioner's co-defendants to testify at trial, thereby not subjecting the State's case to adversarial testing." (Ans. Ex. D at 8, Dkt. No. 19-4.) He did not present this argument in his postconviction appeal or postconviction PLA. Nor did he raise this argument on direct appeal.

- Thomas claims that his trial counsel was ineffective for failing to object to the medical examiner's stipulated testimony. (Pet. at 9, Dkt. No. 1.) Although Thomas argued in his postconviction petition that trial counsel was ineffective for not

objecting to the stipulation of the medical examiner's testimony (Ans. Ex. D at 11–12, Dkt. No. 19-4), Thomas failed to include this argument in either his postconviction appeal or his postconviction PLA. Thomas also never raised this argument on direct appeal.

- Thomas claims that his trial counsel was ineffective for failing to "file a motion to suppress evidence, based upon a prompt presentment hearing." (Pet. at 9, Dkt. No. 1.) Although Thomas does not specify what evidence his counsel purportedly failed to attempt to suppress, this argument corresponds with the argument he raised in his postconviction petition faulting his trial counsel for failing to file "a motion to suppress [Thomas's videotaped] statement for the State's failure to comply with the 'prompt presentment' requirement." (Ans. Ex. D at 10–11, Dkt. No. 19-4.) However, Thomas did not include this argument in either his postconviction appeal or his postconviction PLA, and never raised this issue on direct appeal.[3]

- Thomas argues that his trial counsel's cumulative errors prejudiced his defense. (Pet. at 10, Dkt. No. 1.) Thomas argued in his postconviction petition that his "constitutional right to the effective assistance of counsel was violated due to trial counsel's cumulative errors." (Ans. Ex. D at 12–13, Dkt. No. 19-4.) Thomas failed to raise this argument in either his postconviction appeal or his postconviction PLA, and he did not raise the claim on direct appeal.

Accordingly, these claims are all procedurally defaulted.

Thomas also raises a number of claims regarding the ineffective assistance of his direct-appeal counsel. However, the only such claim he raised in his postconviction proceedings was that his direct-appeal counsel was ineffective for failing to raise trial counsel's ineffectiveness in not requesting separate verdict forms on Thomas's murder indictments. (*See* Ans. Exs. D, E, H, Dkt. Nos. 19-4, 19-5, 19-8.) Thomas did not request habeas relief from this Court on that basis, and thus all of Thomas's claims regarding the ineffective assistance of his direct-appeal counsel are procedurally defaulted.

---

[3] On direct appeal, Thomas did claim that his attorney was ineffective for failing to file a motion to suppress his videotaped statement on the premise that it was coerced. (Ans. Ex. L at 9–16). This argument was asserted through an entire round of state-court review, as Thomas also included this claim in his PLA on direct appeal. (Ans. Ex. M at 8, Dkt. No. 19-13.) However, the argument regarding failure to file a suppression motion brought before this Court (and in Thomas's postconviction petition) is based on a separate set of facts and is procedurally defaulted because it was not asserted through a full round of state-court review. *See Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) ("In the state courts, the petitioner must present both the operative facts and legal principles that control each of his claims.").

None of Thomas's procedurally-defaulted claims fall within the (1) cause and prejudice, or (2) fundamental miscarriage of justice exceptions that would allow this Court to review them despite procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Thomas argues that his failure to assert the defaulted claims was caused by the ineffective assistance of his direct-appeal counsel. (*See* Reply at 26–27, Dkt. No. 28.) However, a claim of ineffective assistance of counsel cannot serve as cause to excuse procedural default unless the petitioner raised it as an independent claim in one full round of state-court review or, if the claim is itself defaulted, unless petitioner can show cause and prejudice for that ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000) ("[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an independent constitutional claim . . . [which must] be first raised in state court." (emphasis in original)); *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). As discussed above, Thomas has not pursued a claim regarding his direct-appeal counsel's performance through a complete round of state-court review, nor has he shown any independent cause and prejudice to excuse this default.

Thomas also claims that his lack of counsel when he filed his postconviction petition serves as cause for his procedural default pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (Reply at 41, Dkt. No. 28.) The *Martinez* Court held that cause may excuse a default if: "(1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial counsel claim; and (4) state law requires that an ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–

21)). However, *Martinez* is not applicable to cases originating in Illinois because Illinois courts consider ineffective assistance claims on direct appeal, and thus collateral proceedings are not the first opportunity to raise such claims. *E.g.*, *People v. Miller*, 988 N.E.2d 1051, 1062 (Ill. App. Ct. 2013); *Chatman v. Magana*, No. 14-cv-01650, 2014 WL 3866016, at *5 (N.D. Ill. Aug. 6, 2014) (holding that an Illinois prisoner could not successfully invoke *Martinez*); *Puente v. Chandler*, No. 04-cv-04877, 2014 WL 1318675, at *9–10 (N.D. Ill. Apr. 1, 2014) (same). Because Thomas has not shown cause sufficient to waive procedural default, the cause and prejudice exception does not apply to Thomas's defaulted claims.

Thomas also has not shown a fundamental miscarriage of justice. Although Thomas argues that he is actually innocent of the crime of first-degree murder because the State failed to prove that he "aimed and pulled a trigger on a gun, to shoot or kill anyone," (Reply at 44–45, Dkt. No. 28), this argument (aside from the fact that it miscomprehends the legal theory under which he was convicted) fails to meet the "demanding" standard required to establish actual innocence. *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014) ("[T]enable actual-innocence gateway pleas are rare: [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). Thomas offers no new evidence of his innocence, much less evidence sufficient to meet this high standard. *See id.; Schlup v. Delo*, 513 U.S. 298, 324 (1995) (a show of actual innocence requires "new, reliable evidence . . . that was not presented at trial").

### C.     Remaining Ineffective Assistance Claim

Thomas raises a single cognizable claim for ineffective assistance of counsel that has not been defaulted: that his trial counsel was ineffective for failing to request separate verdict forms for each theory of first-degree murder upon which his prosecution was based.

Reversing Thomas's conviction on the basis of this claim is only appropriate if he can show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong, the standard for measuring counsel's performance "is that of reasonably effective assistance," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 687, 689. That is, in evaluating a claim for ineffective assistance, the Court presumes that counsel was competent. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Deficient performance requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 455 U.S. at 687. With respect to the second prong, to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that counsel's performance was not deficient, the court need not consider the prejudice issue. *Id.* at 697.

Additionally, Thomas's verdict-forms claim was adjudicated by the state courts, which rejected the claim on Thomas's postconviction petition (Ans. Ex. C at 7–8, Dkt. No. 19-3) and on postconviction appeal. (Ans. Ex. B at 5–6, Dkt. No. 19-2.) The claim is therefore subject to

the strictures of 28 U.S.C. § 2254(d), which precludes relitigation of a claim adjudicated on the merits in state court unless that state-court decision was "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When assessing an ineffective assistance claim that was adjudicated on the merits by the state court, a federal court's habeas inquiry is "doubly deferential;" the Court does not ask whether the state court's *Strickland* determination was incorrect, "but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

This Court finds that the Illinois Appellate Court did not unreasonably apply the *Strickland* standard in its denial of Thomas's postconviction petition claim that his trial counsel was deficient in failing to request separate verdict forms for each theory of first-degree murder upon which his prosecution was based. Thomas argued before the Illinois Appellate Court that if the jury had been asked to specify the theories under which it found him guilty of murder, the jury might have found him guilty only of felony murder, thus preventing the court from sentencing him for the home invasion upon which the felony-murder theory was predicated. (Ans. Ex. E at 22–23.) The Illinois Appellate Court rejected this argument, finding that Thomas "failed to overcome the presumption that counsel's failure to request separate verdict forms was the product of sound trial strategy where requesting separate verdict forms may have made it easier for the jury to find defendant guilty of murder under a theory of felony murder due to the

overwhelming evidence of his participation in the underlying home invasion."[4] (Ans. Ex. B at 5, Dkt. No. 19-2.) Given the circumstances of the criminal case against Thomas—the appellate court on direct review also commented on the "overwhelming evidence of Thomas'[s] guilt" (Ans. Ex. A at 26, Dkt. No. 19-1)—this Court declines to find that the decision was an unreasonable application of *Strickland. See Strickland*, 466 U.S. at 689 (petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (internal quotation marks omitted). The Illinois Appellate Court also found that because Thomas failed to make a showing that trial counsel's performance was deficient under *Strickland*, it did not need to address the prejudice prong of that test. (Ans. Ex. B at 5, Dkt. No. 19-2.) Again, this conclusion is consistent with *Strickland*. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

## II. Findings of Fact and Credibility Determinations by Postconviction Trial Court

Finally, Thomas also argues that he deserves habeas relief because the postconviction trial court violated his due process and equal protection rights. According to Thomas, the postconviction trial court violated the "state statute governing post-conviction proceedings." (Pet. at 11–12, Dkt. No. 1.) He elaborates on this argument in his reply brief, arguing that the postconviction trial court violated 725 ILCS 5/122–2, the Illinois Post-Conviction Hearing Act, by impermissibly engaging in findings of fact and credibility determinations. (Reply at 6–13, Dkt. No. 28.)

Such a claim is not cognizable on federal habeas review. This Court cannot grant habeas relief based only on state court determinations of state law questions. *Hemphill v. Hardy*, No. 11-

---

[4] This decision was in line with other Illinois Appellate Court decisions rejecting this argument. (Ans. Ex. B at 5, Dkt. No. 19-2 (citing *People v. Calhoun*, 935 N.E.2d 663, 682. (Ill. App. Ct. 2010); *People v. Mabry*, 926 N.E.2d 732, 741 (Ill. App. Ct. 2010); *People v. Braboy*, 911 N.E.2d 1189, 1197 (Ill. App. Ct. 2009))).

cv-01282, 2011 WL 2712592, at *6 (N.D. Ill. July 13, 2011) ("Whether the Illinois court misapplied the state law standard under 725 ILCS 5/122–2 [the Illinois Post–Conviction Hearing Act], however, is not a cognizable claim on federal habeas review." (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."))).

This claim therefore cannot provide a ground for granting Thomas's petition unless it somehow implicates federal law. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). But Thomas's attempt to convert his argument regarding the state statute into a federal constitutional claim also must fail. Thomas argues that misapplication of the statute constitutes a violation of the Equal Protection and Due Process Clauses. It is well established, however, that there is no constitutional right to state collateral review of a criminal conviction. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide [collateral] relief."); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("No constitutional provision or federal law entitles [defendant] to any state collateral review. . . . Unless state collateral review violates some independent constitutional right . . . errors in state collateral review cannot form the basis for federal habeas corpus relief."). Therefore, any allegation "that the State may have failed to comply with its post-conviction procedures would not raise a cognizable federal habeas claim." *Resendez v. Smith*, 692 F.3d 623, 628 (7th Cir. 2012). Accordingly, the Court denies Thomas's claim for habeas relief based on the postconviction trial court's purported error.

**CONCLUSION**

For the foregoing reasons, Thomas's petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254 is denied. Since reasonable jurists would not find this Court's ruling debatable, *see Slack* v. *McDaniel*, 529 U.S. 473, 484 (2000), this Court declines to certify any issues for appeal under 28 U.S.C § 2253(c).

ENTERED:

Dated: January 16, 2018

Andrea R. Wood
United States District Judge